UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GREGORY D. ERSKINE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 1:08-cv-00313-B-W |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Gregory Erskine is serving a 37-year sentence after being convicted by a Maine jury for the murder of his girlfriend Lisa Deprez. Erskine pursued a direct appeal and a petition for post-conviction review in the state courts. In this 28 U.S.C. § 2254 proceeding he raises the same two ineffective assistance of counsel claims that he raised in his state post-conviction review proceeding. He claims that his trial counsel was ineffective in, one, advising Erskine not to testify at trial and, two, in not investigating, collecting, and presenting evidence of Erskine's state of mind at the time of the crime. In his submissions to this court it is clear that Erskine, while not denying that he is responsible for the death of Deprez, wants most of all to now tell his side of the story in a court proceeding. He continues to acknowledge that at the time of his trial he was not prepared to testify on his own behalf because he was so distraught over Deprez's death. Concluding that the state post-conviction court did not unreasonably apply the standard of Strickland v. Washington, 466 U.S. 668 (1984) to Erskine's two Sixth Amendment claims, I recommend that the Court deny Erskine 28 U.S.C. § 2254 relief.

### ***Discussion***

The Maine Law Court summarized the facts underlying Erskine's present incarceration as follows:

> On May 13, 2004, Lisa Deprez and Erskine were together at a bar in spite of the fact that Erskine was subject to a preconviction bail condition that he have no contact with Deprez. Another bail condition prohibited him from entering her residence. Nonetheless, Erskine went to Deprez's apartment where, around 8:00 P.M., neighbors heard loud noises and a voice asking for help coming from the apartment. The neighbors called the police, who on their arrival heard similar noises from the apartment and forcibly entered it. Erskine ran from a closet and into the street, where he was caught by the police.
>
> The police found Deprez in a bedroom in her apartment, lying on the floor, with a blanket over her. After the blanket was removed, blood was visible on her hands, face, and hair. Deprez did not respond, and an ambulance took her to the hospital. Deprez died from lack of oxygen to her brain and multiple traumatic injuries.
>
> When the police examined Deprez's apartment after she was taken to the hospital, they found blood on a pillow in the bedroom and on the floor. They also found blood in a nearby bathroom where the toilet tank was cracked and leaking.
>
> When Erskine was interviewed by the police and read his Miranda[1] rights, he responded that he had tried to hurt Deprez and that he did not have any rights. He admitted that he and Deprez had been arguing in her apartment and that he had put his hand over her mouth to keep her from yelling. He said he may have given her a bloody nose. He said he knew he was not supposed to be in her apartment and that was why he hid in the closet and ran out when the police came. There were blood stains on his hands.
>
> After Deprez died and the autopsy had been done, police and the medical examiner went to Deprez's apartment to look for an object that could have caused a crescent-shaped injury to the back of her head. The police found a hammer that the medical examiner opined could have caused the head injury, which injury could have been fatal by itself. Testing of the hammer revealed Deprez's DNA on its head.

State v. Erskine, 2006 ME 5, ¶¶ 2-6, 889 A.2d 312, 315. The challenges Erskine raised in his direct appeal are not at issue here.

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

***Standard for 28 U.S.C. § 2254 Review of State Court Determinations***

"This case is governed by the standards of review established by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, and the well-established Strickland test for ineffective assistance of counsel claims. Strickland v. Washington, 466 U.S. 668, 687 (1984)." Sleeper v. Spencer, 510 F.3d 32, 37(1st Cir. 2007). Under AEDPA a federal court may issue the writ only if the state court's adjudication resulted in a decision that "was contrary to" clearly established federal law, involved an "unreasonable application" of clearly established federal law, or was based on an "unreasonable determination of the facts in light of the evidence presented." See 28 U.S.C. § 2254(d); See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999).

The Maine Law Court denied Erskine a certificate of probable cause in a summary order (see Order Denying Certificate Probable Cause at 1, State App. D), and, as a consequence, the post-conviction court's order[2] is the last reasoned decision and the focus of this court's 28 U.S.C. § 2254 review. See Ylst v. Nunnemaker, 501 U.S. 797, 800-06 (1991). The State of Maine is not asserting that these claims were not fully exhausted as required by 28 U.S.C. § 2254(b) and there is absolutely no question that the two ineffective assistance claims in this petition are the same two Erskine fully litigated in the state post-conviction court. Erskine is relying on the articulation of his claims in his memorandum in support of a certificate of probable cause to the Maine Law Court for purposes of this 28 U.S.C. § 2254 proceeding.[3]

---

[2] That decision is found in an unpublished opinion. For ease of reference, I have attached the entire opinion to this recommended decision as Appendix A.

[3] In his reply memorandum Erskine does expand in the following manner on the points raised in this memorandum. He opines:

***The State Post-Conviction Court's Factual Findings***

The post-conviction court considered Erskine's claims "that he was ineffectively assisted by counsel at his trial because his defense attorneys failed to call him to testify at trial and because his attorney failed to obtain an evaluation of his criminal responsibility for the crime." (Post-conviction Decision and Order at 3-4, State App. C.) The post-conviction Court discussed the performance of Erskine's two trial counsel at great length, both in regard to the decision not to testify at trial and the investigation of a potential mental health defense. (Id. at 1-3.) The judge concluded that the attorney's decision to use the police video of Erskine's interrogation rather than having Erskine testify allowed the defense to avoid cross-examination and prevented the impeachment of Erskine regarding his prior criminal record during cross-examination. Furthermore, Erskine admitted at the state post-conviction hearing that he was in no emotional state to testify at the time of trial and did not want to testify. The post-conviction judge also concluded

---

> One other point I would like to mention and I don't know if it will have any bearing on your decision in this matter, but it's something I found to be disturbing. I recall at my sentencing Judge Crowley made a statement just before announcing my sentence that he believed that I covered Lisa with a blanket in an attempt to hide her body. Well first of all and more importantly, I did not even know at the time that Lisa was even hurt, and I don't know anything about a blanket being on her. Also I don't [know] how a person could really hide someone who is lying in the middle of a room on the floor simply by placing a blanket over them. I also think that Judge Crowley's personal opinion about this weighed heavily in his decision to sentence me to 37 years which was 5 more than the D.A. recommended.
>
> Also, when my post-conviction review came up in Feb. of 2008 it was Judge Crowley who presided over the hearing. I can't help but think that the same judge who presided over my trial and who sentenced me could [not] be fair and impartial when deciding my post-conviction review, especially since he has already made known his personal opinion about what he thought I was thinking on May 13, 2004. This just seems like a huge conflict of interest.

(Pet'r Reply Mem. at 5, Doc. No. 12.)

Even assuming that this states a claim for a constitutional violation, see cf. United States v. McGill,11 F.3d 223, 225 (1st Cir. 1993) ("[W]hen, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."), it is clear from the record that Erskine did not exhaust this claim by raising it in his memorandum seeking review by the Maine Law Court of the post-conviction court's order.

that based upon the available mental health evaluations, the attorneys' conclusion that there was no factual basis for a mental health defense was factually accurate.

***The State Post-Conviction Court's Strickland Reasoning***

The post-conviction judge provided the following discussion of the legal parameters of Erskine's two ineffective assistance claims:

> The Petitioner has failed to show that the performance of his attorneys at trial fell below the performance expected of an ordinary fallible attorney. Indeed, Ruffner clearly stated at the PCR hearing that his strategy and reasons for choosing not to have the Petitioner testify was to avoid subjecting the Petitioner to cross-examination and possibly impeachment. Furthermore, the Petitioner has never stated that he wanted to testify at his trial; indeed, at the PCR hearing, the Petitioner reiterated that he "wanted to die" and did not care whether or not he testified.
>
> Nor has the Petitioner shown that his attorneys' decision not to further pursue the issue of his criminal responsibility due to possible mental disease or condition fell below the standard of an ordinary fallible attorney. Attorney Ruffner sought the opinions of an independent psychologist (Dr. Robinson) and a psychological pharmacologist. He also had the benefit of several reports from the State Forensic Service. The sum of these opinions and reports convinced Attorney Ruffner that a "mental defense was simply not in the cards."

(Post-conviction Decision and Order at 4-5, State App. C.) In a footnote the court reflected:

> In fact, these opinions and reports seemed to hint that the Petitioner was malingering, according to the testimony of both Attorney Ruffner and Dr. LeBlanc at the PCR hearing. Thus, Attorney Ruffner's strategic decision not to seek and introduce further evaluations falls even further within the performance expected of a reasonable attorney.

(Id. at 5.n. 1.)

***Why Erskine is Not Entitled to 28 U.S.C. § 2254 Relief on his Two Sixth Amendment Claims***

The post-conviction court unquestionably applied a standard for ineffective assistance that is consistent with Strickland, the "clearly established" Supreme Court law for purposes of 28 U.S.C. § 2254(d)(1) review. See Lewis v. Maine, 254 F.Supp.2d 159, 173 (D. Me. 2003); Kimball v. State, 490 A.2d 653, 656 (Me.1985); accord Brewer v. Hagemann, 2001 ME. 27, ¶9,

771 A.2d 1030, 1033; see cf. Mello v. DiPaulo, 295 F.3d 137,144 (1st Cir. 2002) (observing that the Strickland and Massachusetts standards are the "functional equivalent" for purposes of proceeding with the § 2254(d)(1) determination).

With regards to this court's review of the post-conviction court factual findings, they are reviewed through the lens of 28 U.S.C. § 2254(d)(2) and (e). Accordingly, I must "presume that the state court's findings of fact are correct. For this purpose, the term 'facts' refers to 'basic, primary, or historical facts,' such as witness credibility and recitals of external events." Sleeper, 510 F.3d at 38 (citing Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001), quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). As Norton v. Spencer stressed: "A 'determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" 351 F.3d at 6 (quoting 28 U.S.C. § 2254(e)(1).

In this 28 U.S.C. § 2254 proceeding Erskine does not rebut the findings of fact with clear and convincing evidence he simply relies on argument and a hope that this court will draw a different inference from the post-conviction court record. For instance, in his reply memorandum Erskine opines: "I would argue that my attorney[s'] reasoning that there was no viable mental health defense was grossly underestimated and that they did not ask for an evaluation of my state of mind was nothing less than negligent." (Pet'r Reply Mem. at 1, Doc. No. 12.) He recounts the multiple psychological symptoms he was experiencing and the many strong medications he was taking which resulted in "troubling reactions." (Id.) Erskine elaborates:

> My attorneys Vincent and Ruffner knew about all this and decided there was no viable mental health issue? To me that just doesn't make any sense at all. And their decision not to have me testify because I would have made a poor witness

> was probably based on my mental condition at the time, which in effect kind of contradicts their belief that there was no viable mental health defense. I told them I was not mentally capable to talk in court about Lisa. I believe I was still in a somewhat state of shock about what happened to Lisa. THEIR reason for not having me testify was different than the real reason. In fact their basis that there was a no mental health defense came from the evaluation of the doctors at Riverview that I was not insane or psychotic, therefore in their opinion there was no mental health issue. Maybe someone should inform them that there are other psychological illnesses that can [a]ffect a person[']s state of mind. The evidence of my state of mid at the time of this incident is clearly the most significant and important piece of evidence in this whole matter and nobody even wants to admit that it exists. I did not pursue this at the time because I did not care what happened to me. I was so devastated by Lisa's death that I just wanted to die myself.
>
> …
>
> The most important issue in this case which is very serious to say the least, has somehow been avoided from the very beginning. The one thing that could shed some light on what happened and why it happened is being over looked. It seems to me that in a case as serious as this involving the death of someone that all of the evidence should be examined. That's what I'm asking you for at this time. Allow my doctors to be questioned and give their opinions. Allow me to testify in court now that I am in a state of mind that will allow me to do so.

(Id. at 1-3.) Erskine's desire to have an opportunity to finally tell his side of the story is understandable, but state court criminal proceedings are not dress rehearsals and the availability of 28 U.S.C. § 2254 relief is limited to those rare cases in which a petitioner can meet the high burdens of § 2254(d)(1) production.

In terms of 28 U.S.C. § 2254(d)(2) and (e)(1) and his obligation to present the relevant evidence to the State courts, Erskine's assertion that there is evidence relevant to his state of mind that no one wants to admit exists is conclusory. He has not attempted to provide this Court with any factual details or record evidence in support of this assertion. See Rule Governing Section 2254 Proceedings 2(b); see cf. United States v. McGill, 11 F.3d 223, 225 (1st Cir.1993) ("When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether the petitioner has carried the devoir

of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.")(citations omitted). Erskine does indicate that he told post-conviction counsel to call his doctors as a witness rather than let the medical evidence turn on the testimony of Dr. LeBlanc (id. at 2-3) however, he has not submitted any evidence that rebuts the post-conviction court's factual findings. To the extent that he is attempting to establish cause for his procedural default for his claim by citing post-conviction counsel's performance (and assuming this notion of cause applies to factual issues covered by 28 U.S.C. § 2254(e)(1) as opposed to legal arguments) he did not exhaust this claim by presenting it to the Maine Law Court in seeking a certificate of probable cause. See Carsetti v. Maine, 932 F.2d 1007, 1011 n. 2 (1st Cir. 1991) (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)).

Once you accept the findings of fact set forth by the post-conviction court it is beyond dispute that the two 28 U.S.C. § 2254 ineffective assistance of counsel claims must fail. Counsel was acting well within the range of Sixth Amendment competency in advising Erskine, who did not want to testify, not to testify and to rely on the video instead. The same is true apropos counsel's decision to not attempt to prove that Erskine was operating with a mental impairment so significant that the evidence might absolve him of a murder charge, the opinions that were obtain having been against such a theory, even to the extent of portraying Erskine as a malinger. The post-conviction court's closely related prejudice determinations are equally irreproachable under the 28 U.S.C. § 2254 review standards.

In sum, the post-conviction court's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28

U.S.C. § 2254(d)(2) and its application of the Strickland analysis to these facts was not unreasonable, id. § 2254(d)(1).

***Conclusion***

Based upon the foregoing, I recommend that the State's motion to dismiss be granted and the petition denied. I further recommend that a certificate of appealability should not issue in the event Erskine files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 12, 2008